## RUF ET AL. *v.* MUELLER.

[No. 7,641.   Filed November 28, 1911.]

1. PARTITION.— *Title.— Judgment.— Sale.—* An ordinary partition suit does not present the question of title; nor does a judgment in partition change the title held by the parties prior thereto, nor a sale thereunder vest in the purchaser a greater right than the parties possessed.   p. 12.

2. PARTITION.—*Sales.—Childless Widow.—Statutes.—Construction. —Contracts.—*Where a partition was decreed in a suit between decedent's children of a prior marriage and his childless second wife, and a sale made by the commissioner in 1874, the Supreme Court at that time holding that such wife took a life estate in one-third and the children the fee simple, the purchaser at such sale obtained a title in fee simple; and the subsequent holding of the Supreme Court that the widow in such cases takes a fee simple in one-third of his real estate, and such children become her forced heirs does not relate back so as to disturb prior contract rights.   p. 12.

From Lake Circuit Court; *V. S. Reiter,* Judge.

Suit by Claudia Mueller against Robert J. Ruf and others. From a decree for plaintiff, defendants appeal. *Affirmed.*

*McMahon & Conroy,* for appellants.

*Johannes Kopelke* and *John M. Stinson,* for appellee.

MYERS, J.—Appellee, as Claudia Schreiber, brought this suit against appellants and others to quiet title to certain real estate in Lake county. After filing the complaint, and before trial and judgment, she married, thereby changing her name to Claudia Mueller.

The complaint, an answer thereto in denial, a cross-complaint by appellants to quiet title to an undivided one-third of the real estate described in the complaint, an answer thereto in denial, an affirmative answer by appellee to the effect that she derived title to said undivided one-third by descent, from her father, who purchased said property through his grantors at a judicial sale, and that she and her grantors have had the exclusive possession, use and control of said property for more than twenty years last past, and a reply in denial, formed the issues submitted to the court. There was a trial and finding for appellee on her complaint, and against the appellants on their cross-complaint, and a judgment in accordance with the findings.

The overruling of appellants' motion for a new trial is the only error assigned, and in support of which it is insisted that the decision of the court was contrary to law, and was not sustained by sufficient evidence.

It is conceded that on January 6, 1873, Christian Ruf died intestate in Lake county, Indiana, the owner of the real estate in controversy; that he left a childless second wife, Catherine Ruf, and children by his first wife; that one of said children, a daughter, after the death of her father, died childless, leaving her husband, George Erhardt, who with said children named are the appellants; that said Catharine Ruf remarried, and thereafter, on April 27, 1874, in the Lake Circuit Court commenced proceedings for the partition

of said real estate, showing in her complaint that said Chris-
tian Ruf died the owner in fee of the real estate now in
question, and leaving the plaintiff and the defendants, his
children surviving; that as such heir she was entitled to one-
third of the land in fee simple; that the same was indivisi-
ble, and praying partition.   Summonses were served on the
defendants, who were minors, and after they had been de-
faulted, a guardian *ad litem,* was appointed, who, after being
duly sworn, filed an answer.   On May 12, 1874, the court
found for plaintiff and appointed a commissioner to make
sale of the land.   On September 7, 1874, the commissioner,
pursuant to the order of the court, reported that he had sold
the land to Fredericka Brunst for $1,625.   On September 9,
1874, a deed for the land to Brunst was reported to the
court and approved.   On September 24, 1874, said commis-
sioner reported a partial distribution of the proceeds of said
sale, taking credit for $183.75, paid to said widow.   This re-
port was approved by the court, and thereafter the court
allowed said commissioner $50 for services rendered, and
said cause was continued until the November term, 1875,
when it was dismissed.   On April 24, 1876, said widow filed
her petition in the court for the distribution of said money
reported by said commissioner, showing that said Christian
Ruf died leaving the petitioner and four children, minors,
by a former wife, and asking for an order that one-third of
said money be paid to her.   The court found that she was
entitled to a life estate only in one-third of the land sold;
that she was thirty-six years of age, and that her life estate
was of the value of $356.38; that there was still due to her
under the statute, and for other claims, the sum of $240,
and ordered said commissioner to pay her that amount less
her *pro rata* share of costs.   On November 24, 1876, said
commissioner made his final report, showing a distribution
of the proceeds of said sale, which report was approved,
and the commissioner discharged; that said widow died in
the year 1892; that said Brunst, on the day she received

said commissioner's deed, took possession of the land in dispute, and from that time to the present time, April 20, 1909, she and her successors in title have remained in the undisputed possession of the land, and have held it without dispute or interference from anyone, and have paid taxes from year to year since said purchase, and that appellee is now in the actual and undisturbed possession of said land.

Appellants insist that no question of title was presented or adjudicated in the suit for partition, and that the commissioner sold only the then existing interest of the parties, which was, under the law as then interpreted, the undivided two-thirds of the land in fee, and the life estate of the widow in one-third. Appellee claims that if the appellants had any such claim as they now assert, it is barred by the statute of limitations, also that under the facts, the commissioner's deed in the partition suit vested in Fredericka Brunst the fee to all the land.

The statute in force at the time said partition proceedings were had, and the commissioner's deed executed to Fredericka Brunst provided: "If a husband die testate or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, free from all demands of creditors." §3014 Burns 1908, §2483 R. S. 1881. Also: "That if a man marry a second or other subsequent wife, and has by her no children, but has children alive by a previous wife, the land which, at his death, descends to such wife, shall, at her death, descend to his children." §2487 R. S. 1881. These statutory provisions were in force May 6, 1853, and continued in force without change or amendment until 1889 (Acts 1889 p. 430).

The answer to the questions presented depends upon whether we adopt the judicial interpretation given to these statutes at the time the Ruf partition proceedings were had, and the commissioner's deed to Fredericka Brunst was executed, or the construction given to said statutes at a later

date. On this subject the doctrine announced in the case of *Haskett* v. *Maxey* (1893), 134 Ind. 182, is founded in reason, consistent with justice and especially applicable to the facts in this case. In that case the owner of the land died in 1855, leaving a childless second wife and children by a former wife. In 1856 a suit for partition was begun, the complaint showing the respective interests of the parties. One-third of the land described in that complaint was set off to the widow, for life, and the remainder was partitioned among the heirs by the former wife. The widow at once took possession of the land so set off to her, and on February 13, 1865, sold, and by quitclaim deed conveyed it to Henry Williams. Later said children by quitclaim deeds conveyed to Williams their interest in the widow's portion of said land. Williams, on the execution of the deed to him by the widow, took exclusive possession of the land, claiming title thereto. On December 5, 1885, said children, or their descendents, commenced suit against Williams, claiming the land, and asking to have their title quieted. Haskett claimed title through Williams. In passing on the question thus presented it was said: "Under the provisions of §§2483, 2487 R. S. 1881, it was held, in the case of *Martindale* v. *Martindale* [1858], 10 Ind. 566, that a second or subsequent wife, having no children by her husband, took a life estate only in his lands where he left, upon his death, children alive by a former wife. The decision was rendered at the May term of this court in the year 1858. There is an unbroken line of decisions, rendered by this court, extending from that date to the May term, 1881, placing the same construction upon this statute, as will be seen from an examination of the following cases, namely: *Ogle* v. *Stoops* [1858], 11 Ind. 380; *Rockhill* v. *Nelson* [1865], 24 Ind. 422; *Louden* v. *James* [1869], 31 Ind. 69; *Longlois* v. *Longlois* [1874], 48 Ind. 60; *Long* v. *Miller* [1874], 48 Ind. 145; *Russell* v. *Russell* [1874], 48 Ind. 456; *Hendrix* v. *Mc-*

*Beth* [1878], 61 Ind. 473; *Swain* v. *Hardin* [1878], 64 Ind. 85; *Hendrix* v. *Sampson* [1880], 70 Ind. 350; *Chisham* v. *Way* [1881], 73 Ind. 362.''

The court in the case of *Utterback* v. *Terhune* (1881), 75 Ind. 363, placed a different construction on said sections of the statute holding that the children by a former wife upon the death of the childless second wife became her forced heirs. This is the rule appellants seek to have us adopt in this case. For sixteen years prior to the execution of the deed to Mrs. Brunst and for seven years thereafter the court of last resort in this State held to the rule announced in the case of *Martindale* v. *Martindale, supra.* Contractual relations based upon such judicial precedents of so long standing ought not to be disturbed.

While the complaint in the partition proceedings did not tender a question of title (*Bryan* v. *Uland* (1885), 101 Ind. 477; *Habig* v. *Dodge* (1891), 127 Ind. 31; *Thompson* v. *Henry* (1899), 153 Ind. 56), it is true that the judgment in partition did not change the title held by the parties before such judgment, nor would a sale of land by a commissioner, pursuant to an order of court, in a partition proceeding, vest in the purchaser any better title than that held by the cotenants; but it should and does transfer to the purchaser whatever title such cotenants may have. So in this case, applying the settled law at the time the contract rights were acquired, to the facts then existing, we must hold that upon the death of Christian Ruf, his widow took a life estate to an undivided one-third, and his children the fee, and that the commissioner's sale and deed in the partition proceedings transferred to the purchaser the interest held not only by the widow, but by the children, these appellants, as well.

We rest our conclusion on the principle affirmed in the case of *Ohio, etc., Trust Co.* v. *Debolt* (1853), 16 How. *416, *432, 14 L. Ed. 997, ''that if the contract when made was valid by the laws of the state, as then expounded by all the

departments of its government, and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent act of the legislature of the state, or decision of its courts, altering the construction of the law.''

There was no error in overruling appellants' motion for a new trial.

Judgment affirmed.